**MISSOURI PACIFIC RAILROAD COMPANY, Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,**

**Arkansas & Missouri Railroad Company, Intervenor.**

Nos. 91–1046 and 92–1286.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 4, 1994.

Decided May 20, 1994.

David L. Meyer, Washington, DC, argued the cause for petitioner. With him on the briefs was Arvid E. Roach, II, Washington, DC. Thomas H. Odom, Washington, DC, entered an appearance.

Thomas J. Stilling, Atty., I.C.C., Washington, DC, argued the cause for respondents. With him on the brief were Henri F. Rush, Acting Gen. Counsel, ICC, Ellen D. Hanson, Sr. Associate Gen. Counsel, ICC, Anne K. Bingaman, Asst. Atty. Gen., U.S. Dept. of Justice, and Catherine G. O'Sullivan and John P. Fonte, Attys., U.S. Dept. of Justice, Washington, DC.

Richard A. Allen, Washington, DC, argued the cause and filed the brief for intervenor Arkansas & Missouri R. Co.

Before SILBERMAN, BUCKLEY, and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

The Missouri Pacific Railroad Company petitions for review of a decision by the Interstate Commerce Commission setting the amount that the railroad must pay for trackage rights over a bridge and adjacent approach tracks owned by the Arkansas & Missouri Railroad. The ICC held, and the Missouri Pacific does not dispute, that such compensation must include a rental component based upon the value of the A & M assets it uses. The Missouri Pacific does contend, however, that the Commission's decision to value those assets at replacement-cost-new-less-depreciation (RCNLD) rather than at their purchase price is arbitrary and capricious and an impermissible departure from its stated valuation policy. For the reasons set forth below, we deny the petition for review.

## I. BACKGROUND

For more than fifty years the Missouri Pacific and the St. Louis–San Francisco Railway each owned and operated a bridge over the Arkansas River at Fort Smith, Arkansas. In order to facilitate a navigation improvement project proposed by the Army Corps of Engineers, the Missouri Pacific agreed in 1968 to remove its bridge and to enter into a trackage rights agreement for the use of the Frisco's adjacent bridge and 1.63 miles of approach track. *Missouri Pacific Railroad Co.—Trackage Rights—St. Louis–San Francisco Railway Co.,* Finance Docket No. 25623 (July 25, 1965).

In 1986 the A & M purchased from the Frisco's successor-in-interest 146 miles of marginally profitable track, including the shared bridge and approach. The sales agreement did not specify a purchase price but rather provided that the A & M would pay $500,000 per year for 30 years, plus a lump sum payment of the amount (if any) by which the net liquidation value of the assets, as determined at a time within that 30–year period to be chosen by the A & M, exceeds $3.7 million.

The A & M immediately sought to increase the amount that the Missouri Pacific pays for trackage rights. When the Missouri Pacific refused to pay more, the A & M terminated their agreement. Since both railroads wanted to (and in fact did) continue the shared use arrangement, they jointly asked the Commission to set an appropriate fee. *See* 49 U.S.C. § 11343(a)(6) (trackage rights agreement requires Commission approval); *Thompson v. Texas Mexican Ry.,* 328 U.S. 134, 147, 66 S.Ct. 937, 945, 90 L.Ed. 1132 (1946) (Commission authority extends to fixing terms and conditions).

Invoking its most recent trackage rights decision, *St. Louis Southwestern Ry. Co. Compensation—Trackage Rights,* 4 I.C.C.2d 668 (1987) (*SSW Compensation* ), the Commission determined that the compensation due to the A & M as landlord-owner is the

sum of (1) the variable cost it incurs due to the Missouri Pacific's operating over the track; (2) 70% of the A & M's track maintenance and operating expenses (based upon the Missouri Pacific's proportionate usage); and (3) an interest or rental component adequate to compensate the A & M for the use of its capital. *Arkansas & Missouri Railroad Co. v. Missouri Pacific Railroad Co.,* 6 I.C.C.2d 619, 622, 629 (1990) (*A & M I*). The interest component would be calculated by multiplying the value of the shared assets by the current pre-tax nominal cost of capital and apportioning the total among the two railroads based upon their respective shares of the traffic using the line. *Id.* at 622 n. 8. Determining the value of the assets proved to be the only sticking point.

The Commission noted that under its *SSW Compensation* precedent the capitalized earnings valuation method would presumptively apply. It questioned whether to apply that method to the A & M assets, however, inasmuch as their fair market value—a component of the calculation—had not been established when A & M purchased them. *Arkansas & Missouri Railroad Co. v. Missouri Pacific Railroad Co.,* Finance Docket No. 31281 (March 13, 1989); *A & M I,* 6 I.C.C.2d at 624. The Missouri Pacific urged the Commission to use the capitalized earnings approach nonetheless, suggesting that the fair market value of the shared bridge and track be determined by calculating the net present value of the installment purchase contract and multiplying the result by the ratio of the estimated undepreciated replacement cost of the line at issue to the estimated undepreciated replacement cost of the entire A & M system. *A & M I,* 6 I.C.C.2d at 626. For its part, the A & M proposed that the Commission use the RCNLD valuation method, based upon the assumption that the bridge and appurtenant track have sufficient value both to the A & M and to the Missouri Pacific that each railroad would want to replace them to their present condition if the assets were destroyed.

The Commission considered both proposals and a valuation method based upon the net liquidation (or salvage) value of the assets. It rejected the latter approach as inaccurate

because the net liquidation value is zero, yet the railroads obviously consider the assets valuable enough to incur the cost of this dispute over trackage rights compensation. *Id.* at 625 n. 16. It rejected the Missouri Pacific's proposal to use the capitalized earnings approach because of its inherent circularity; the earnings of the assets are in large part the usage fees that the Missouri Pacific is already paying for the right to use them. *Arkansas & Missouri Railroad Co. v. Missouri Pacific Railroad Co.,* 7 I.C.C.2d 164, 165 n. 4 (1990) (*A & M II*). In the end, therefore, the Commission adopted the RCNLD method of valuation. *A & M I,* 6 I.C.C.2d at 625–26. Missouri Pacific now petitions this court for review of that decision.

## II. ANALYSIS

■ The court has only limited scope to review the substantive validity of the Commission's decision: we must affirm unless that decision is arbitrary and capricious, exceeds the Commission's authority, or "diverges without explanation from agency precedent." *United Transportation Union v. United States,* 905 F.2d 463, 467 (D.C.Cir. 1990); *Cross–Sound Ferry Services, Inc. v. ICC,* 873 F.2d 395, 401 (D.C.Cir.1989). As the Commission clearly has the authority to fix the terms of trackage rights agreements, we are limited to determining only whether, in doing so, the Commission "considered all relevant factors and provided a reasoned explanation for its decision." *Iowa Terminal Railroad Co. v. ICC,* 853 F.2d 965, 969 (D.C.Cir.1988) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983)).

■ The Missouri Pacific argues that the Commission's choice of the RCNLD method of setting trackage rights compensation is both an unexplained departure from the precedent established in *SSW Compensation* and substantively unreasonable. We do not agree on either score. First, the Commission made a reasoned decision to depart from the *SSW Compensation* precedent with respect to the valuation of the A & M's assets. It considered a number of valuation methods.

It described each valuation method that it considered and in turn gave a sensible reason for rejecting or accepting each. *See A & M I,* 6 I.C.C.2d at 624–27; *A & M II,* 7 I.C.C.2d at 166–71. Ultimately it chose the RCNLD method as the best way to balance the interests of the landlord and tenant railroads—including the A & M's interest in being able to renew and replace its assets. *A & M I,* 6 I.C.C.2d at 627.

The Commission declined to use the capitalized earnings valuation method, which it had used in the *SSW Compensation* proceeding, because it could not reliably value the underlying assets involved in this case. *Id.* at 624–25. In order to value a particular railroad line using the capitalized earnings approach, the Commission multiplies (1) the asset value of the entire railroad system by the ratio of (2) the earnings of the line at issue to (3) total system earnings. *Id.* at 624 & n. 13. In *SSW Compensation* the agency had access to reliable line-specific and total system earnings data for the lessor railroad and a reliable estimate of fair market value of the total system based upon a recent arm's-length transaction. *See A & M II,* 7 I.C.C.2d at 170.

The Commission reasonably determined that none of these elements can reliably be estimated for the trackage at issue here. Reliable line-specific and total system earnings are not available for the A & M because it is a "small, entrepreneurial start-up operation" with initial operating losses. *A & M I,* 6 I.C.C.2d at 625. Nor can the Commission value the A & M's assets by reference to an arm's-length purchase price because it cannot determine a net present value based upon the purchase agreement. That agreement calls for fixed annual payments for 30 years plus the difference (if any) between salvage value and the present value of the annual payments—an amount that cannot be determined until some unknown time in the future. *A & M II,* 7 I.C.C.2d at 167 n. 7. Thus, the purchase agreement provides at most an approximation of the net liquidation value of the assets; but as the Commission points out, limiting the A & M's return on its assets to what it could obtain by liquidating them would only chill future investment in

shortline railroads. *See A & M I,* 6 I.C.C.2d at 626–27; *A & M II,* 7 I.C.C.2d at 167–69. Thus, the Commission reasonably limited *SSW Compensation* to situations in which the determinable asset value exceeds the net liquidation value.

█ As to the second point, the Missouri Pacific contends that the compensation set by the Commission on the basis of the RCNLD approach is itself evidence that the Commission's decision to use that method is unreasonable. According to the Missouri Pacific, the A & M's return on its investment in the track and bridge is obviously too high because it "requires [the Missouri Pacific] to pay A & M more in rental for the use of a 1.6 mile segment of A & M's 146–mile system than A & M was paying . . . annually [to buy] the entire A & M railroad," and because it values the entire A & M rail system at over thirty times "the purchase price A & M . . . negotiated at arm's length."

Neither of these objections to the RCNLD method is well taken. For as the Commission pointed out, "use of an RCNLD valuation will not result in unreasonable charges because it is based on the methodology adopted to decide maximum rate reasonableness cases, a standard that balances the interests of shippers and carriers." *A & M II,* 7 I.C.C.2d at 168. Moreover, the reasonableness of the Commission's decision need not be evaluated solely by reference to its monetary consequences for the Missouri Pacific. Rather, the Commission may also (and did) take into account the A & M's need to attract capital that will enable it to renew and replace its assets. *See A & M I,* 6 I.C.C.2d at 627; *A & M II,* 7 I.C.C.2d at 167. Finally, whether the RCNLD method values the A & M as a whole at more than the installment sales contract price is speculative because, again as the Commission pointed out, the latter figure is indeterminate.

## III. CONCLUSION

In sum, we hold that the Commission did not act arbitrarily and capriciously or otherwise unlawfully in establishing the amount that the Missouri Pacific must compensate

the A & M for trackage rights. The Missouri Pacific's petition for review is therefore

*Denied.*